Ecvzcamp                          Plea

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,                 New York, N.Y.

4              v.                             S4 14 CR 130 (RPP)
                                              S1 14 CR 254 (SAS)
5   RYAN CAMPBELL,

6              Defendant.

7   ------------------------------x

8
                                              December 31, 2014
9                                             3:20 p.m.

10
    Before:
11
                    HON. DEBRA C. FREEMAN,
12
                                              Magistrate Judge
13

14                         APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    BY:  NEGAR TEKEEI
17       Assistant United States Attorney

18  GARY G. BECKER
         Attorney for Defendant
19
    KEVIN G. ROE
20       Attorney for Defendant

21  Also Present:  Darnell Edwards, U.S. Postal Inspector

22

23

24

25

2

1      (Case called)

2          MS. TEKEEI:  Good afternoon, your Honor.  Negar Tekeei

3      and Postal Inspector Darnell Edwards for the government.  Thank

4      you, your Honor.

5          THE COURT:  Good afternoon.

6          MR. ROE:  Good afternoon, your Honor.  If the please

7      the Court, Kevin G. Roe appearing on behalf of Brian Campbell

8      in the matter of 14 CR 254.

9          MR. BECKER:  And good afternoon, your Honor, I'm Gary

10     Becker.  I'm appearing on behalf of Mr. Campbell on Indictment

11     number 14 CR 130, which is before Judge Patterson.

12         Mr. Campbell is seated in court here next to us.

13         THE COURT:  All right.  I note that both of these

14     indictments are superseders, one a 1st superseding and one a

15     4th superseding.

16         Has Mr. Campbell been presented on each of the charges

17     that he's now facing?

18         MS. TEKEEI:  Yes, your Honor, he has.

19         THE COURT:  This is an unusual proceeding, because I

20     gather that Mr. Campbell wishes to enter a plea on charges in

21     two separate cases, and I gather that they are not connected

22     cases, and they are pending before different district judges.

23         It is my understanding both judges have referred the

24     matter here.  I'm going to try do this in one combined plea

25     proceeding.  Hopefully this will go smoothly.  It's going to be

Ecvzcamp                    Plea

1    my attempt to separate things out, where necessary do things

2    together where I can.  We'll hope for the best.

3            Let me start by explaining to Mr. Campbell that the

4    indictments in these two different cases each charge you with

5    felony crimes.  And you have a right to a trial in these types

6    of charges before a United States District Judge, in this case

7    potentially before two different United States District Judges.

8            If you're found guilty, you'll be sentenced on any of

9    these particular charges before a United States District Judge.

10   And ordinarily a defendant who wishes to enter a plea to these

11   types of charges would do that before a District Judge as well.

12   That judge would then conduct the so-called plea allocution or

13   the question and answer session that must accompany the entry

14   of a plea.

15           However, with a defendant's consent a United States

16   Magistrate Judge, such as myself, also has the authority to

17   take a plea.  If you were to consent to proceed before a

18   Magistrate Judge for the purpose of entering a plea, you would

19   receive all of the same procedural protections as you would

20   receive if you were proceeding before a District Judge.  Do you

21   understand that?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  Counsel, can you adjust the microphone,

24   please?

25           THE DEFENDANT:  Yes, your Honor.

Ecvzcamp                    Plea

1          THE COURT:  Is it your wish to consent to proceed

2     before a Magistrate Judge for the purpose of entering a plea on

3     each of these two cases?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  I've been handed two separate consent

6     forms for the two cases.  One is 14 Crim. 254 pending before

7     Judge Scheindlin, and the other actually a lower number, 14

8     Crim. 130 pending before Judge Patterson.  The forms are both

9     captioned United States against Ryan Campbell.  They're both

10    consent forms indicating consent to proceed before a United

11    States Magistrate Judge on a felony plea allocution.

12          Did you sign each of these two forms?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  All right.  Before you signed them, did

15    you discuss them with counsel in each particular case?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Did your attorneys explain these forms to

18    you?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Have any threats or promises of any kind

21    been made to cause you to agree to this proceeding today, this

22    procedure today?

23          THE DEFENDANT:  No, your Honor.

24          THE COURT:  I'm going to accept the consents with

25    respect to each of the two cases.

Ecvzcamp                    Plea

1          Let me ask counsel a question before I proceed.

2     Ordinarily, just because of the numbering, it would be my

3     instinct to, if I'm dealing with the case separately, to deal

4     with the lower number case first.  That's the Judge Patterson

5     case.  I noticed in the plea agreement you do it the other way

6     around.  Is there a reason for that or where it's logical?

7          MS. TEKEEI:  Only because our charges were first in

8     line.  He was superseded into Judge Patterson's case.  So the

9     Judge Scheindlin case began first, and then later the defendant

10    was superseded into the Judge Patterson case.  That was the

11    only sort of logic by it.

12          We're happy to proceed however your Honor wishes.

13          THE COURT:  Okay.

14          Mr. Campbell, in order to take your plea I must ask

15    you some questions for which I need to place you under oath.

16    Would you please raise your right hand?

17          THE DEFENDANT:  Yes, your Honor.

18          (Defendant sworn)

19          THE COURT:  Please state your full name for the

20    record.

21          THE DEFENDANT:  Ryan Campbell.

22          THE COURT:  Are you a United States citizen?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  How old are you?

25          THE DEFENDANT:  36.

Ecvzcamp                    Plea

1              THE COURT:  How far did you go in school?

2              THE DEFENDANT:  GED.

3              THE COURT:  Are you now or have you recently been

4     under the care of a doctor for any reason?

5              THE DEFENDANT:  No, your Honor.

6              THE COURT:  How about a psychiatrist or psychologist?

7              THE DEFENDANT:  No, your Honor.

8              THE COURT:  Do you take any medication?

9              THE DEFENDANT:  No.

10             THE COURT:  Do you have any condition that affects

11    your ability to see or to hear?

12             THE DEFENDANT:  No, your Honor.

13             THE COURT:  Do you have any condition that affects

14    your abilities to think or to reason or to understand or make

15    decisions or judgments on your own behalf?

16             THE DEFENDANT:  No, your Honor.

17             THE COURT:  Have you ever been treated for drug

18    addiction or alcoholism?

19             THE DEFENDANT:  No, your Honor.

20             THE COURT:  As you appear before me today, are you

21    under the influence of any kind of drugs or alcohol or

22    medication?

23             THE DEFENDANT:  No, your Honor.

24             THE COURT:  Do you generally feel all right today?

25             THE DEFENDANT:  Yeah.

Ecvzcamp                          Plea

1        THE COURT:  Do you have any trouble understanding the

2   questions I'm asking you?

3        THE DEFENDANT:  No, your Honor.

4        THE COURT:  Have you received a copy of the first

5   superseding information in the case number 14 Crim. 254?

6        THE DEFENDANT:  The superseding indictment, yes, your

7   Honor.

8        THE COURT:  The first superseding, yes?

9        THE DEFENDANT:  Yes, your Honor.

10       THE COURT:  Have you had a chance to read it or do you

11  want me to take the time to read it to you?

12       THE DEFENDANT:  No.  I had a chance to read it with my

13  attorney, your Honor.

14       THE COURT:  Do you understand what it says you did?

15       THE DEFENDANT:  Yes, your Honor.

16       THE COURT:  Have you had enough time to talk to your

17  attorney in that case about the charges and about how you wish

18  to plead?

19       THE DEFENDANT:  Yes, your Honor.

20       THE COURT:  Are you satisfied with the representation

21  and advice given to you by counsel in connection with that

22  case?

23       THE DEFENDANT:  Yes, your Honor.

24       THE COURT:  Are you ready to enter a plea in that

25  case?

Ecvzcamp                    Plea

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  All right.  Let's start with that one

3     then.

4              I understand you're prepared to enter a plea to counts

5     two and three of that indictment, is that correct?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  All right.  Bearing in mind that count two

8     of that indictment alleges that you violated Title 18 of the

9     United States Code, Section 1028(a), which makes it a crime to

10    commit what's referred to a here as aggravated identity theft,

11    how do you wish to plead to that charge, guilty or not guilty?

12             THE DEFENDANT:  I plead guilty to that charge, your

13    Honor.

14             THE COURT:  All right.  And bearing in mind that count

15    three of that indictment charges that you violated Title 18 of

16    the United States Code, Section 1349, which makes it a crime to

17    conspire with others to commit bank fraud, how do you wish to

18    plead to that conspiracy charge, guilty or not guilty?

19             THE DEFENDANT:  I plead guilty, your Honor.  Guilty.

20             THE COURT:  All right.  Have you received a copy of

21    the fourth superseding indictment in the case numbered 14 Crim.

22    130, that's the case before Judge Patterson?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Have you had a chance to read that

25    indictment or do you want me to take the time to read that one

Ecvzcamp                    Plea

1    to you?

2                THE DEFENDANT:  No.  I read it and I discussed it with

3    my attorney, your Honor.

4                THE COURT:  Do you understand what it says you did?

5                THE DEFENDANT:  Yes, your Honor.

6                THE COURT:  You had enough time to talk to your

7    attorney about the charges in that indictment and how you wish

8    to plead?

9                THE DEFENDANT:  Yes, your Honor.

10               THE COURT:  Are you satisfied with the representation

11   and advice given to you by your counsel in connection with that

12   case?

13               THE DEFENDANT:  Yes, your Honor.

14               THE COURT:  Are you ready to enter a plea?

15               THE DEFENDANT:  Yes, your Honor.

16               THE COURT:  I understand that you wish to enter a plea

17   to count one of that indictment, which charges a violation of

18   Title 18 of the United States Code, Section 1951, which makes

19   it a crime to commit robbery as that's defined in federal law,

20   specifically the law known as the Hobbs Act.  How do you wish

21   to plead to that robbery count, guilty or not guilty?

22               THE DEFENDANT:  I plead guilty, your Honor.

23               THE COURT:  All right.  Because you are proposing to

24   enter guilty pleas to these charges, I have to ask you some

25   additional questions to be sure that you understand the nature

Ecvzcamp                    Plea

1    of the charges in each of these cases and the consequences of

2    your plea, and also to ensure that your plea is voluntary.

3    Again, I'm going to start with the case that's before Judge

4    Scheindlin.

5            I want you to understand that if convicted of the

6    second count in that indictment, that's the aggravated identity

7    theft count you could face, on that count alone, a prison

8    sentence of two years, a mandatory two years, which must run

9    consecutively to any other sentence, a maximum term of

10   supervised release of one year, a fine in the greatest amount

11   of $250,000 or twice the gross pecuniary gain or monetary gain

12   derived from the offense or twice the gross pecuniary loss to

13   persons other than yourself resulting from the offense, and a

14   mandatory special assessment of $100.  Do you understand all of

15   that?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  Do you understand that if convicted of

18   count three of that indictment, that's the conspiracy to commit

19   bank fraud, you could face on that charge alone a maximum

20   sentence of 30 years imprisonment, a maximum term of supervised

21   release of five years, a maximum fine of $1 million, and a

22   mandatory assessment again of $100.  Do you understand all of

23   that?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  Do you understand that on that indictment

Ecvzcamp                    Plea

1   in that case, on those two charges the total maximum term of

2   imprisonment that you could face would be 32 years, with a

3   mandatory minimum term of two years imprisonment?

4               THE DEFENDANT:  Yes, your Honor.

5               THE COURT:  Do you also understand that, if convicted

6   of these crimes, the Court could also require you to pay any

7   restitution to the victims of the crimes?

8               THE DEFENDANT:  Yes, your Honor.

9               THE COURT:  Turning to the second of the two cases,

10  the case before Judge Patterson.  Do you understand that if

11  convicted of the Hobbs Act robbery that's stated in count one,

12  you could face on that count alone a maximum term of

13  imprisonment of 20 years, a maximum term of supervised release

14  of three years, a maximum fine of the greatest of $250,000 or

15  twice the gross pecuniary gain that you derived from the

16  offense, or twice the gross pecuniary loss to persons other

17  than yourself resulting from the offense, as well as a

18  mandatory special assessment of $100?  Do you understand all of

19  that?

20              THE DEFENDANT:  Yes, your Honor.

21              THE COURT:  Do you also understand that, if convicted

22  of that crime, you could again face an order to pay restitution

23  to any victims of the crime?

24              THE DEFENDANT:  Yes, your Honor.

25              THE COURT:  Do you also understand that if you are

Ecvzcamp                    Plea

1     convicted, you could be required to forfeit to the government

2     all property, real and personal, that constitutes or derives

3     from the proceeds traceable to your criminal activity?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Do you understand that if as part of your

6     sentence with respect to any of these counts you are placed on

7     a term of supervised release, and you then violate any

8     condition of that release, your supervised release may be

9     revoked and you may face an additional term of imprisonment?

10              THE DEFENDANT:  Yes, your Honor.

11              THE COURT:  Do you understand that if that should

12     happen, you may not get credit for time served on supervised

13     release; in other words, the Court that sentenced you could

14     require you to serve in prison all or part of the term of

15     supervised release that's authorized by law for the offense in

16     question, without giving you credit for time you may have

17     already served on supervised release?

18              THE DEFENDANT:  Yes, your Honor.  I understand.

19              THE COURT:  Do you understand that you have a right to

20     plead not guilty to these charges and the right to a speedy and

21     a public trial on the charges, and a jury trial if you wish?

22              THE DEFENDANT:  Yes, your Honor.

23              THE COURT:  Do you understand that if these cases

24     remain with two different judges, you would have a right to a

25     trial in each of the two cases?

Ecvzcamp                    Plea

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you understand that if you were to go

3     to trial, the burden would be on the government to prove your

4     guilt by competent evidence beyond a reasonable doubt?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Do you understand that if you were to go

7     to trial, you would be presumed to be innocent, unless and

8     until the government did prove your guilt beyond a reasonable

9     doubt?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  Do you understand that if you were to go

12    to trial by jury, a jury composed of 12 people selected from

13    this district would have to agree unanimously that you were

14    guilty of the charged crimes?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Do you understand that at a trial you

17    would be entitled to be represented by an attorney at all

18    stages, and if you could not afford to hire one, an attorney

19    would be provided to you free of charge?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Do you understand that your right to be

22    represented by counsel and, if necessary, to have the Court

23    appoint counsel for you, applies not only to trial, but also to

24    every other stage of the proceedings against you?

25         THE DEFENDANT:  Yes, your Honor.

Ecvzcamp                    Plea

1          THE COURT:  Do you understand that at a trial you

2     would be entitled to, through your attorney, to cross-examine

3     any witnesses called by the government to testify against you?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Do you understand that at a trial you

6     would be entitled to testify and to present evidence on your

7     own behalf?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Do you understand that this also means

10    that you would be entitled to call witnesses to testify on your

11    behalf?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Do you also understand that you would be

14    entitled to have the Court issue subpoenas to compel witnesses

15    to appear to testify at a trial?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Do you understand that at a trial you

18    would not be required to incriminate yourself; that is, you

19    would not be required to testify against yourself?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Do you understand that this means that at

22    a trial you would have the right to testify if you wanted to do

23    so, but no one could force you to testify if you did not want

24    to do so, and, furthermore, no inference or suggestion of guilt

25    could be drawn if you chose not to testify?

Ecvzcamp                    Plea

1          THE DEFENDANT:  Yes, your Honor, I understand.

2          THE COURT:  Do you understand that if you go forward

3    with your guilty pleas in both of these cases, you will be

4    giving up all of these types of protections as I've just

5    described in both of the cases, including your very right to a

6    trial, and the only remaining step would be the imposition of

7    sentence by whichever District Judge is presiding at your

8    sentencing?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  Do you understand that if any of the

11   answers you give me today prove to be untruthful, you could

12   face a separate prosecution for perjury or for making a false

13   statement to the Court?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Do you understand that if your guilty plea

16   is accepted and you are adjudged guilty, that adjudication may

17   deprive you of valuable civil rights such as the right to vote,

18   the right to hold public office or to serve on a jury or to

19   possess a firearm?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Do you still wish to plead guilty in both

22   of these cases?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Do you understand that the decision as to

25   the appropriate sentencing in your -- I'm sorry -- the

Ecvzcamp                    Plea

```
 1    appropriate sentence in each of these cases will be entirely up

 2    to the sentencing judge?

 3              THE DEFENDANT:  Yes, your Honor.

 4              THE COURT:  Do you understand that at present one of

 5    these cases is pending before Judge Patterson, and that he will

 6    decide your sentence in that case, and the other is presently

 7    pending before Judge Scheindlin who will decide your sentence

 8    in the other case, unless the two cases end up consolidated, in

 9    which case there may be a single judge who decides your

10    sentence in connection with all the charges.  Do you understand

11    all of that?

12              THE DEFENDANT:  Yes, your Honor.

13              THE COURT:  Do you understand that whatever judge it

14    is who decides your sentence will have discretion in making

15    that determination, and that that discretion will be limited

16    only by what the law requires for the particular charged

17    offense?

18              THE DEFENDANT:  Yes, your Honor.

19              THE COURT:  Do you understand that in determining your

20    sentence, the Court will have to consider the so-called

21    sentencing guidelines, even though it will not be required to

22    sentence you within the guidelines range?

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  Have you had a chance with each of your

25    two attorneys to talk about how the guidelines may be
```

Ecvzcamp                    Plea

1    calculated in the two cases where you're facing charges?

2                THE DEFENDANT:  Yes, your Honor.

3                THE COURT:  Do you understand that the Court will not

4    be able to determine the guidelines for either of the cases,

5    any of the charges, until after a presentence report has been

6    completed with respect to those charges, and both you and the

7    government have had the chance to challenge the facts reported

8    there by the probation officer?

9                THE DEFENDANT:  Yes, your Honor.

10               THE COURT:  Do you understand that even after the

11   guidelines calculation has been made for it, the sentencing

12   judge will have the authority to impose a sentence that is

13   either less severe or more severe than the sentence recommended

14   by the guidelines, as long as it's within the statutory maximum

15   of the crime?

16               THE DEFENDANT:  Yes, your Honor.

17               THE COURT:  Do you understand that in addition to

18   considering the sentencing guidelines, the Court will also have

19   to consider possible departures from the guidelines, and also a

20   number of different factors in deciding on the appropriate

21   sentence to impose in your case?

22               THE DEFENDANT:  Yes, your Honor.

23               THE COURT:  Now, in each of your two cases, have you

24   and the attorney who is representing you in each case, had a

25   chance to talk about the various factors that are listed in the

1   relevant provision of the law, that's Title 18 of the United

2   States Code, Section 3553(a) and about how those different

3   factors may apply to you in your particular circumstances?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  Do you understand that those factors

6   include, but are not limited to, the actual conduct in which

7   you engaged, the victim of the offense, the role you played in

8   the offense, whether or not you accepted responsibility for

9   your acts, whether you have any criminal history, and whether

10  you have engaged in any obstruction of justice?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Do you understand that even if you end up

13  shocked and disappointed by your sentence with respect to any

14  of these charges, you will still be bound by your guilty plea?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Do you understand that under some

17  circumstances you will -- you or the government may have the

18  right to appeal any sentence that is imposed?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Do you understand that there is no parole

21  in the federal system, and that if you are sentenced to prison

22  you will not be released on parole?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Understanding everything I've just told

25  you, do you still wish to plead guilty?

Ecvzcamp                     Plea

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  I have a copy of a plea agreement between

3    you and the government.  It's a letter dated December 24, 2014,

4    from the Office of the United States Attorney to your counsel.

5    It's addressed to counsel in both of the two cases.  Did you

6    sign this plea agreement?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Before you signed it, did you discuss it

9    with each of your two attorneys?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Did they explain to you all its terms and

12   conditions?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  This plea agreement, which I have

15   reviewed, contains three separate guidelines calculations; one

16   with respect to the case currently pending before Judge

17   Scheindlin, one with respect to the case currently pending

18   before Judge Patterson, and another that may apply if the cases

19   end up consolidated for sentencing.  Do you understand that?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Do you understand that with respect to the

22   case before Judge Scheindlin, the agreement states the

23   conclusion that if the guidelines were applied, you could

24   expect a sentence in that case, meaning with respect to counts

25   two and three, to be from 70 to 87 months, but because of the

Ecvzcamp                      Plea

1     two year sentence that must run consecutively to any other

2     sentence, that would become 94 to 111 months.  Do you

3     understand that?

4                    THE DEFENDANT:  Yes, your Honor.

5                    THE COURT:  Do you understand that Judge Scheindlin is

6     not bound by the guidelines analysis in the plea agreement?

7                    THE DEFENDANT:  Yes, your Honor.

8                    THE COURT:  Do you understand she will be do her own

9     analysis, which may result in a guidelines range that is

10    different than the one stated in the agreement?

11                   THE DEFENDANT:  Yes, your Honor.

12                   THE COURT:  Do you understand that even if she agrees

13    with that analysis, and if you are sentenced separately on that

14    case, she would still be free to impose a prison term of less

15    than 94 or more than 111 months; do you understand that as

16    well?

17                   THE DEFENDANT:  Yes, your Honor.

18                   THE COURT:  Do you understand that with respect to

19    Judge Scheindlin's, the case before Judge Scheindlin, you are

20    agreeing that no so-called departure from the guidelines range

21    of 94 to 111 months would be warranted, and you will not seek

22    one, although you are still reserving your right to seek a

23    sentence outside of that range based on those factors set out

24    in Section 3553(a)?

25                   THE DEFENDANT:  Yes, your Honor.

Ecvzcamp                    Plea

1          THE COURT:  Do you understand with respect to that

2    case standing alone, if you are sentenced separately in that

3    case, you are agreeing that as long as you are sentenced to no

4    more than 111 months, you would be giving up your right to

5    challenge that sentence both by appeal to the Court of Appeals,

6    and also by any further application to this Court?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Do you understand with respect to the case

9    currently pending before Judge Patterson, the plea agreement

10   states the conclusion that if the guidelines were applied in

11   that case, you could expect a range for a prison sentence to be

12   from 63 to 78 months?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Do you understand if you are sentenced

15   separately by Judge Patterson on that case, he will do his own

16   analysis, which may result in a different guidelines range than

17   the one I just stated?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Do you understand that regardless, he

20   would be free to sentence you to less than 63 or more than 78

21   months?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Do you understand that you are agreeing

24   under this plea agreement not to seek departure from that

25   stated guidelines range, although again you're reserving your

Ecvzcamp                    Plea

1   right to seek a sentence outside of that range based on the

2   various factors that may apply to your particular case?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  Do you understand you are agreeing, if you

5   are sentenced separately on that case, you will not seek to

6   appeal your sentence as long as it is not more than 78 months,

7   that means either to the Court of Appeals or by making any

8   other applications to this Court?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  You also understand that the plea

11  agreement states that if these cases were consolidated for

12  sentencing purposes, the guidelines range then together on all

13  of the three counts at issue would be from 84 to 105 months,

14  except again because of the two year mandatory sentence that

15  must run consecutive to any other sentence that I spoke of

16  earlier, that would become a guidelines range of 108 to 129

17  months; do you understand that?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  Do you understand that if you are

20  sentenced in a consolidated proceeding, whichever judge

21  presides would be free to sentence you to less than 108 or more

22  than 129 months?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  And do you understand that if that is what

25  happens, if you are sentenced in a consolidated proceeding, you

Ecvzcamp                    Plea

1   would be giving up your right to challenge your sentence both

2   by appeal to the Court of Appeals, or by any further

3   application to this Court, as long as your sentence is no more

4   than 129 months?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Do you understand that the government --

7   let me rephrase that.

8          Do you understand that if these cases were

9   consolidated for sentencing purposes, the Government's taking

10  no position as to whether the sentences in each case should run

11  concurrently or consecutively?

12         Is that not correct, counsel?

13         MR. BECKER:  Most respectfully, your Honor, that is in

14  the event they are not consolidated, the government will take

15  no position.

16         THE COURT:  Oh, I'm sorry.  I misspoke.  That's what I

17  meant to say.  Let me say that again.

18         Do you understand that if the cases are not

19  consolidated for sentencing, the government is currently taking

20  no position as to the sentences in each case separately, should

21  run concurrently or consecutively?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Thank you, counsel.

24         Do you understand that under the terms of the plea

25  agreement, you are agreeing, in connection with the case

Ecvzcamp                    Plea

1    currently before Judge Scheindlin, to make restitution in a set

2    amount?  That amount being -- counsel, what page of the

3    agreement was that on?

4              MS. TEKEEI:  At the bottom of page two, your Honor.

5    And just for clarification to that amount, including but not

6    limited to that amount.  And it's $523,751.45.

7              THE COURT:  I'm sorry.  That's not what I was talking

8    about.

9              MS. TEKEEI:  I'm apologize.

10             THE COURT:  I was talking about the restitution for

11   the other case, Judge Scheindlin case.  Wasn't there an

12   agreement?

13             MS. TEKEEI:  It is, your Honor.  I apologize.  I was

14   looking at the forfeiture section.  It is on page three, the

15   third paragraph.

16             THE COURT:  That's the same amount, correct?

17             MS. TEKEEI:  It is the same amount, your Honor.

18             THE COURT:  Yes.  Just so I understand, there is an

19   agreement to enter a consent order of restitution in that sum

20   of $523,751.45 in the case pending before Judge Scheindlin, and

21   an agreement to forfeit the same amount of money in a consent

22   forfeiture order in the other case before Judge Patterson?

23             MR. ROE:  Judge, I think the forfeiture's intended to

24   represent any available assets that would go towards the

25   restitution figure.  I don't believe there is a double counting

Ecvzcamp                    Plea

1    of the same figure twice.

2            THE COURT:  That's why I'm asking.  Because the way

3    that it reads, the bottom of page two if you take a look it

4    says, "Defendant hereby admits the forfeiture allegation with

5    respect to count three of the S1 14 Crim. 254 indictment and

6    agrees to forfeit to the United States," et cetera, et cetera,

7    an amount including but not limited to this sum of money.  And

8    it says there two sentences later on the top of page three,

9    "Defendant consents to the entry of a consent order of

10   forfeiture."

11           So was that consent order of forfeiture supposed to

12   have that amount in it?  Because I also see that amount as

13   the -- oh, that's on the 254.  I'm sorry.  That's on the 254

14   indictment, as is the restitution.

15           But there is no set amount of restitution on the 130

16   indictment?

17           MR. BECKER:  That is correct, your Honor.

18           MS. TEKEEI:  That is correct, your Honor.

19           THE COURT:  All right.  I got confused briefly by the

20   headings in your plea agreement.

21           MR. ROE:  But I think the Court noting, and the

22   government to acknowledge that the amount sought, whether by

23   restitution or forfeiture, is a single figure of the

24   $523,751.45.

25           Is that correct, counsel?

Ecvzcamp                    Plea

1        MS. TEKEEI:  The plea agreement --

2        THE COURT:  Government's not seeking it twice?

3        MS. TEKEEI:  We're not seeking it twice, your Honor.

4        MR. ROE:  That's simply the question.  Thank you,

5   Judge.

6        THE COURT:  Okay.  All right.  So let me see if I can

7   get this straight for the purposes of the allocution.

8        Do you understand, in connection with the case that is

9   pending before Judge Scheindlin, that's the 14 Crim. 254 case,

10  that you are agreeing to make restitution in the amount that

11  was just stated, $523,751.45, specifically to TD Bank?

12       THE DEFENDANT:  Yes.

13       THE COURT:  Do you understand you are agreeing to a

14  consent order of restitution in that amount?

15       THE DEFENDANT:  Yes, your Honor.

16       THE COURT:  Do you understand in that case under the

17  plea agreement you are admitting the forfeiture allegation

18  contained in the indictment with respect to count three, and

19  you are agreeing to forfeit to the United States any and all

20  property constituting or derived from proceeds traceable to

21  that offense, which would include but not be limited to the

22  amount that is subject to forfeiture -- I'm sorry -- the

23  restitution order, although the government has confirmed it is

24  not looking for you to pay that amount twice.  Do you

25  understand that?

Ecvzcamp                    Plea

1            THE DEFENDANT:  Yes, your Honor.

2            THE COURT:  Do you also understand that under the

3    terms of this plea agreement you are admitting the forfeiture

4    allegation with respect to count one of the other indictment,

5    that's the S4 14 Crim. 130 indictment, and you are also

6    agreeing to forfeit to the government any and all property

7    constituting or derived from proceeds traceable to the

8    commission of that crime?

9            THE DEFENDANT:  Yes, your Honor.

10           MS. TEKEEI:  Your Honor, may I, just one point of

11   clarification?

12           The issue of the government seeking it twice, I think

13   I misunderstood that earlier.

14           I just want to be 100 percent clear.  In terms of the

15   restitution amount and the forfeiture amount as to the case in

16   front of Judge Scheindlin.  The paragraph at the top of page

17   three states That "It's further understood that any forfeiture

18   of the defendant's assets shall not be treated as satisfaction

19   of any fine, restitution, cost of imprisonment or any other

20   penalty the Court may impose upon him in addition to

21   forfeiture."  So I just want to be clear about that.

22           THE COURT:  Are you looking to recover that amount

23   twice, once as restitution paid to the bank and once as

24   forfeiture to the Government?

25           MS. TEKEEI:  Your Honor, there is a difference between

Ecvzcamp                    Plea

 1   what is forfeitable and there is a difference between

 2   restitution.  Now, I can't say, standing here today -- you

 3   know, the agreement is what it is.  This is our standard

 4   language and I don't want to vary from that in any way, shape

 5   or form.

 6             THE COURT:  Let's go off the record for a second.

 7             (Off-the-record discussion)

 8             THE COURT:  Can we go back on the record?

 9             MR. ROE:  Yes, Judge.

10             THE COURT:  All right.  For the record, we have had a

11   rather long interlude where I discussed a bit with counsel this

12   issue of a consent order of forfeiture and a consent order of

13   restitution in the same case with the same sum, and where

14   counsel have conferred with one another and with Mr. Campbell.

15             Mr. Campbell, are you ready to proceed at this point?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Okay.  Let me just see if I can clarify.

18   I can't speak for Judge Scheindlin, nor for Judge Patterson

19   should the matter end up consolidated before him as to whether

20   consent orders would be entered by the Court in the form

21   suggested here or how the Court would look at it.

22             Certainly if there is an agreed amount of restitution

23   to a victim of a crime, I'm sure there would be an assumption

24   that that amount should be paid.  It may or may not be the case

25   that the Court would look for further forfeiture beyond that.

Ecvzcamp                    Plea

1   It seems to me somewhat unlikely that the Court would look for

2   the same amount of money to be paid twice.  But the way in

3   which the plea agreement is written, it suggests two separate

4   consent orders with that amount.

5          Do you understand, Mr. Campbell, that forfeiture and

6   restitution legally are two separate concepts; that restitution

7   involves making the victim of a crime whole, and forfeiture

8   involves your forfeiting to the government proceeds traceable

9   to your crime?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Have you had a chance to go over this

12   language in the plea agreement with Mr. Roe, who is

13   representing you in the case where this sum of money has been

14   discussed?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Are you prepared to proceed with your

17   plea?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Do you understand, in any event, that you

20   are agreeing in both of the two cases to forfeit to the

21   government any proceeds of your criminal activity?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Do you also understand, as I said, you may

24   face an order that you pay restitution in full to any victims

25   of your crimes?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Moving onto other provisions of this plea

3   agreement then.

4          Do you understand that even if it turns out that the

5   government has illegally withheld from your counsel in either

6   case material that might assist you in defending yourself at

7   trial, you're giving up your right to complain about that?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Are there any other particular provisions

10  of this plea agreement that any counsel here would like me to

11  go over with Mr. Campbell to make sure he understands?

12          MR. BECKER:  No, your Honor.

13          MR. ROE:  No, Judge.

14          MS. TEKEEI:  Your Honor, I may have missed this.  I'm

15  not sure if you discussed the appeal waiver for the stipulated

16  guidelines range for the consolidated, if the two cases were to

17  be consolidated?

18          THE COURT:  I believe I did.

19          MS. TEKEEI:  Okay.  Thank you, your Honor.

20          THE COURT:  You mean if the matters are consolidated,

21  that defendant would agree not to appeal any sentence within

22  the 108 to 129 month range?

23          MS. TEKEEI:  That's correct your Honor.

24          MR. BECKER:  You did, your Honor.

25          THE COURT:  I thought so.

Ecvzcamp                 Plea

1            MS. TEKEEI:  Thank you.

2            MR. BECKER:  And it's done again, I suppose.

3            THE COURT:  Mr. Campbell, do you understand the basic

4      principle that if you are sentenced separately, you will agree

5      not to challenge any sentence outside of the separate

6      stipulated guidelines ranges that are contained in the plea

7      agreement, and if you are sentenced in the consolidated

8      proceeding you will agree not to appeal or otherwise challenge

9      any sentence outside the stipulated range for consolidated

10     sentencing?

11            THE DEFENDANT:  Yes, your Honor.

12            THE COURT:  All right.

13            Apart from what is in this plea agreement, have any

14     promises of any kind been made to you to influence you to plead

15     guilty?

16            THE DEFENDANT:  No, your Honor.

17            THE COURT:  Have any promises been made to you

18     regarding the actual sentence you will receive on any of these

19     charges?

20            THE DEFENDANT:  No, your Honor.

21            THE COURT:  Do you understand that no one, including

22     either of your attorneys or the government or this Court can

23     give you any assurance as to what your sentence will be, as

24     your sentence will be determined solely by the sentencing judge

25     or judges, after any such judge has ruled on any challenge to

Ecvzcamp                    Plea

1    the presentence report or reports, and has determined whether

2    there are grounds to adjust the guidelines range or to sentence

3    you outside that range?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Have any threats been made against you,

6    either directly or indirectly, to influence how you plead

7    today?

8              THE DEFENDANT:  No, your Honor.

9              THE COURT:  Is your plea voluntary and made of your

10   own free will?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  All right.  I'm going to take these again

13   one at a time.

14             Before I ask you about your conduct, I'm going to ask

15   the government to please summarize the elements of the charges

16   that it would have to establish at trial in order to sustain

17   the charges.

18             Let's start with the case before Judge Scheindlin.  If

19   you could please state the elements of the aggravated identity

20   theft and the conspiracy to commit bank fraud?

21             MS. TEKEEI:  Yes.  Thank you, your Honor.

22             Count two of the superseding indictment charges the

23   defendant with aggravated identity theft in violation of 18

24   United States Code, Section 1028(a).  In order to prove that

25   crime, the government must establish the following elements

Ecvzcamp                    Plea

1      beyond a reasonable doubt:  First, that the defendant knowingly

2      used or transferred or possessed a means of identification of

3      another person; second, that the defendant used the means of

4      identification during and in relation to one of certain other

5      enumerated felony offenses, which include bank fraud, in

6      violation of 18 U.S.C. 1344; and, third, that the defendant

7      acted without lawful authority.

8              And the government would also prove by a preponderance

9      of the evidence that the offense occurred, at least in part, in

10     the Southern District of New York.

11             Count three of the superseding indictment charges the

12     defendant with conspiracy to commit bank fraud in violation of

13     18 United States Code, Section 1349.  In order to prove that

14     crime, the government must establish the following elements

15     beyond a reasonable doubt:  First, the existence of a

16     conspiracy, that is, an agreement or understanding among two or

17     more people to accomplish a criminal or unlawful purpose;

18     second, the knowing association and participation of the

19     defendant in the conspiracy; third, that any one member of the

20     conspiracy committed at least one overt act in furtherance of

21     the conspiracy within the Southern District of New York.

22             And, again, as the purpose of this conspiracy was to

23     commit bank fraud in violation of 18 United States Code,

24     Section 1344, I'd like to set forth the elements of that crime

25     which are:  First, that there was a scheme to defraud a bank or

Ecvzcamp                    Plea

1   obtain money or funds owned or under the custody or control of

2   a bank by means of materially false or fraudulent pretenses,

3   representations, or promises; second, that the defendant

4   executed or attempted to execute the scheme with the intent to

5   defraud the bank; and, third, that at the time of the execution

6   of the scheme the bank had its deposits insured by the Federal

7   Deposit Insurance Corporation.

8           And as to the bank fraud conspiracy, the government

9   would also prove by a preponderance of the evidence that the

10  offense occurred, at least in part, in the Southern District of

11  New York.

12          THE COURT:  All right, let's stop there for the

13  moment.

14          Mr. Campbell, did you just now hear government counsel

15  summarize the elements of aggravated identity theft and

16  conspiracy to commit bank fraud that it would have to prove at

17  trial to sustain those charges?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Do you understand that the government

20  would have to prove each of the elements of those charges

21  beyond a reasonable doubt in order to obtain a conviction

22  against you on those charges?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  All right.  Do you still wish to proceed

25  with your plea as to those charges?

Ecvzcamp                    Plea

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  Can you please tell us in your own words

3    what you did that makes you guilty of those crimes?

4              THE DEFENDANT:  Yes, your Honor.

5              With respect to count number two, the aggravated

6    identity theft, I did -- I used an ID that, that I know that

7    belonged to another person to open up a bank account to commit

8    bank fraud.

9              THE COURT:  When you say an ID, you mean someone's --

10             THE DEFENDANT:  A New Jersey driver's license, New

11   Jersey State driver's license.

12             THE COURT:  Okay.  So you knew it was not yours, it

13   was someone else's ID?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And you used it particularly to open a

16   bank account.  Did you have an intent then to access that

17   account?

18             THE DEFENDANT:  Um, let me, let me all go back a

19   little bit.

20             THE COURT:  Go ahead.

21             THE DEFENDANT:  Yes, I did use an ID that I know that

22   the person was, actual person that really that existed, to open

23   up an account.

24             THE COURT:  Somebody else's ID?

25             THE DEFENDANT:  Yes.

Ecvzcamp                    Plea

1        THE COURT:  When you opened up an account, was it your

2   intention to use that account in order to obtain money that was

3   not yours?

4        THE DEFENDANT:  Yes, your Honor to deposit checks in

5   an account that I knew was -- didn't belong to me.

6        THE COURT:  Did you also intend to withdraw money from

7   the account?

8        THE DEFENDANT:  Yes, your Honor.

9        THE COURT:  Did you have the authority from the person

10  with the New Jersey driver's license to do this?

11       THE DEFENDANT:  No.  I obtained the New Jersey

12  driver's license on my own without that person's authority.

13       THE COURT:  The person didn't know you were opening up

14  a bank account?

15       THE DEFENDANT:  No, your Honor.

16       THE COURT:  How does this -- I assume this relates to

17  the bank fraud?

18       THE DEFENDANT:  Yes, your Honor.

19       THE COURT:  Can you explain that as well?

20       THE DEFENDANT:  Yes.  Um, I did conspire with others

21  to get business certificates to open up -- open up business

22  accounts to deposit checks that didn't belong to --

23       THE COURT:  I'm sorry, checks -- say that again?

24       THE DEFENDANT:  Checks in different businesses' names

25  that didn't belong to me in those accounts to obtain funds from

Ecvzcamp                    Plea

1    those accounts once the checks cleared.

2              THE COURT:  Does that relate to this individual

3    account you just described?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Or totally separate?

6              THE DEFENDANT:  That's -- yes, it relates to -- it's

7    the same as the conspiracy, the overt act of the conspiracy,

8    yes.

9              THE COURT:  All right.  I'm just a little bit

10   confused, because you described businesses and you also

11   described an individual with the driver's license?

12             THE DEFENDANT:  Okay.  The same, the same ID I used in

13   the same scheme to open up -- in that particular -- I opened up

14   a business account with a business account business certificate

15   with that person name, opened up the account and deposited the

16   check into a bank account that I knew that didn't belong to me.

17   The ID didn't belong to me, the check didn't belong to me, with

18   the purpose of obtaining funds from the bank.

19             THE COURT:  Is this bank here in Manhattan?

20             THE DEFENDANT:  No.  But the check was deposited into

21   the bank in Manhattan.

22             THE COURT:  Do you have a proffer of F.D.I.C. insured

23   bank?

24             MS. TEKEEI:  Yes, your Honor.  TD Bank is insured by

25   the Federal Deposit Insurance Corporation.

1          THE COURT:  This was a TD Bank?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  And when you say "conspired with others,"

4     did you agree with at least one other person to engage in

5     activity of setting up accounts that you were not authorized to

6     set up?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Was it part of your agreement to try to

9     obtain funds from the bank to which you're not authorized?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  Did you know what you were doing when you

12    were doing it, that it was not lawful activity?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Was it your intention at the time to

15    defraud the bank and get money to which you were not entitled?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Do either counsel believe any additional

18    facts need to be elicited for a satisfactory allocution to

19    either count two or three?

20         MS. TEKEEI:  Your Honor, I believe Mr. Campbell said

21    he used the ID of another person.  I just want to clarify that

22    on that ID there was the name, Social Security number and date

23    of birth which he also used on the bank account forms.  It's

24    not just the fact of the ID, but its the use of those, that

25    personal identifying information that's the aggravated identity

Ecvzcamp                    Plea

1   theft.

2            THE COURT:  I thought that was implicit, but let me

3   confirm it.

4            I'm sorry, do you need a moment?

5            THE DEFENDANT:  No, no, no.  Just to correct what she

6   was saying.  No, the driver's license doesn't have the Social

7   Security number, but I did use the Social Security number to

8   open up the business account in the bank.  I did use that

9   person's Social Security number to open up the bank account.

10            THE COURT:  You had that person's Social Security

11   number as well?

12            THE DEFENDANT:  Yes.

13            THE COURT:  And did you use information from the

14   driver's license as well, the name, date of birth or anything

15   else?

16            THE DEFENDANT:  Yes, yes.  I had the actual license,

17   yes.

18            THE COURT:  Okay.  So what information was on the

19   license that you used?

20            THE DEFENDANT:  To open up the bank account?

21            THE COURT:  Right.

22            THE DEFENDANT:  The date -- the date of birth, name,

23   Social Security.

24            THE COURT:  Name and separately Social Security

25   number?  Separate Social Security number you had from another

Ecvzcamp                        Plea

1    source?

2            THE DEFENDANT:  To get, to get the -- to get the ID,

3    you have to have the name and the Social Security number to get

4    the actual ID from the Department of Motor Vehicles.

5            THE COURT:  Oh, you came into possession of somebody's

6    name and Social Security number, and then contacted the

7    Department of Motor Vehicles and got a driver's license?

8            THE DEFENDANT:  No.  I had actual birth certificate

9    and Social Security card and went to the Motor Vehicles and got

10   the license.

11           THE COURT:  All right.  So you started with somebody

12   else -- somebody's identity, identifying information other than

13   the driver's license in the first instance, and then you added

14   on the driver's license and used that with the bank?

15           THE DEFENDANT:  Yes.

16           THE COURT:  You also used the Social Security number

17   with respect to the bank fraud?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Counsel believe we have a satisfactory

20   allocution?

21           MS. TEKEEI:  Thank you, your Honor.  Yes.

22           THE COURT:  Anything else from counsel on this matter?

23           MR. ROE:  No, your Honor.

24           THE COURT:  All right.

25           Let's turn to the case before Judge Patterson, S4 14

Ecvzcamp                          Plea

1   Crim. 130.  If I could hear from the government the element of

2   the Hobbs Act robbery that's charged in count one.

3              MS. TEKEEI:  Yes.  Thank you, your Honor.

4              Before I do that, I'd like to place on the record the

5   Government's proof at trial on the Judge Scheindlin case.

6              THE COURT:  Go ahead.

7              MS. TEKEEI:  Thank you.  Had this case proceeded to

8   trial, the government would have proven beyond a reasonable

9   doubt that the defendant participated in a conspiracy from

10  approximately November of 2012 through approximately May of

11  2013 to commit bank fraud, and in connection with committing

12  bank fraud, he also used the personal identifying information

13  of a real person.

14             And the government would have proven that the

15  defendant, working with others, opened up fraudulent bank

16  accounts, deposited stolen checks into those bank accounts, and

17  withdrew the funds, successfully withdrawing more than

18  $500,000.

19             The Government's proof would have included the

20  following:  Surveillance photographs and audio recordings of

21  the defendant using the name and identification information of

22  a real person, opening a fraudulent bank account, depositing a

23  stolen check into that account, and attempting to withdraw

24  funds from the account; testimony from a cooperating witness

25  and other witnesses whom the defendant recruited to open up

fraudulent bank accounts, deposit stolen checks into those

accounts and withdraw funds from those accounts to the tune of

more than $500,000; audio recordings of the defendant and his

coconspirators calling a bank to inquire about the funds in the

fraudulent accounts that they had opened; telephone records,

including telephones used by the defendant showing the

defendant's communications with his coconspirators, and

communications with the bank in connection with the conspiracy;

testimony from the victim companies whose stolen checks the

defendant fraudulently cashed; testimony from representatives

of the banks that were victimized by the defendant and his

coconspirators; identification records and witness testimony

regarding the defendant's true identity; and testimony from the

victim whose identity the defendant stole and used in

connection with this bank fraud scheme.

          Your Honor, as to the elements of --

          THE COURT:  Before you go on.

          MS. TEKEEI:  Yes.

          THE COURT:  You reminded me that I neglected to ask

Mr. Campbell for the timeframe of his conduct with respect to

the bank fraud and identity theft.

          Can you confirm, at least approximately, what dates or

what timeframe you're talking about here?

          THE DEFENDANT:  Yes.  From November -- from November

2012 till May 2013.  That's for the conspiracy.

Ecvzcamp                    Plea

1              THE COURT:  Okay.

2              THE DEFENDANT:  As far as the actual using the ID,

3      that was sometime in November 2012 as far as the identity

4      theft -- aggravated identity theft was November 2012.

5              THE COURT:  Okay.

6              Counsel, if you could, set out for us the elements

7      that would have to be established at trial to prove the claim

8      of Hobbs Act robbery?

9              MS. TEKEEI:  Yes.  Thank you, your Honor.

10             Count one of the indictment before Judge Patterson, S4

11     13 Crim. 130, charges the defendant with conspiring to commit a

12     Hobbs Act robbery.  The elements of that are:  First, the

13     existence at or about the time alleged in the indictment of the

14     conspiracy to commit the robbery; second, that the defendant

15     knowingly and willfully associated himself with and joined in

16     the conspiracy; and, third, that interstate or foreign commerce

17     or an item moving in interstate or foreign commerce was or

18     would have been delayed, obstructed or affected in any way or

19     degree.

20             As the object of the conspiracy was Hobbs Act robbery,

21     that crime has the following four elements:  First, that the

22     defendant obtained or took or attempted to obtain or take the

23     property of another; second, the defendant took or attempted to

24     take the property against the victim's will by actual or

25     threatened force, violence or fear of injury, whether immediate

1    or in the future; third, such actions actually or potentially

2    in any way or degree obstructed, delayed or affected Interstate

3    commerce; fourth, the defendant acted unlawfully, willfully and

4    knowingly.

5              Thank you, your Honor.  I'm sorry.  The government

6    would also prove by a preponderance of the evidence that the

7    crimes have occurred, at least in part, in the Southern

8    District of New York.

9              THE COURT:  Mr. Campbell, did you hear the

10   Government's counsel summarize the elements of the robbery

11   charge that you're facing in the case before Judge Patterson?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Do you understand that to prevail on that

14   charge, the government would have to prove each element of the

15   crime beyond a reasonable doubt?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Do you still wish to proceed with your

18   plea as to that charge?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Did you in fact commit that offense?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Can you please tell us what you did in

23   your own words that makes you guilty of this offense?

24             THE DEFENDANT:  In 2013 I agreed with others about

25   stealing jewelry or watches from a jewelry store in

Ecvzcamp                      Plea

1   Connecticut.  Specifically, I agreed that if the other person

2   actually stole the jewelry or watches, that I would sell them

3   for him and share the proceeds.  And I knew that, and I knew

4   that to get the jewelry -- to get to the jewelry store in

5   Connecticut I had to drive through some part of the Southern

6   District, specifically the Bronx.

7        THE COURT:  Do you know whether it was the intent of

8   person who would commit this robbery to use force or to

9   threaten to use force?

10        THE DEFENDANT:  They, they broke -- they broke the

11   glass window on the outside to take it.

12        THE COURT:  When you agreed to participate in the

13   robbery -- let me make sure I understand.

14        Your agreement was to sell the proceeds.  Was your

15   agreement to participate in the robbery itself?  Was your

16   agreement to sell the property that was stolen?

17        THE DEFENDANT:  My agreement was to -- my agreement is

18   that I identified the location -- I identified the location for

19   the individuals, and if they stole the watches or jewelry, I

20   agreed to sell it with -- for them and get proceeds from

21   selling it for them.

22        THE COURT:  And when you talk about driving through

23   the Bronx, were you there going to the jewelry store, or did

24   you just know someone else would have to drive through the

25   Bronx to get there?  Did you agree to go along and do

Ecvzcamp                      Plea

 1   something?  Time out, go ahead.

 2            (Conferring)

 3            THE DEFENDANT:  I was --

 4            (Pause)

 5            THE DEFENDANT:  Yeah.  Um, your Honor, can I proceed?

 6            THE COURT:  Yes, go ahead.

 7            THE DEFENDANT:  Yes.  Um, I knew that the people that

 8   was actually committing the robbery, I knew that they were

 9   going to -- I was around, but not -- I was around the

10   Southern -- I knew that they was going to drive through the

11   Southern -- through the Bronx to get to where they were going.

12   I knew that.  But I didn't actually participate in the actual

13   committing of the robbery.

14            THE COURT:  And did you know that -- at the time you

15   agreed to what you agreed to -- so you agreed to give somebody

16   a location and to help sell the proceeds, the property that was

17   stolen -- did you understand when you were agreeing to do this

18   that, if necessary, force would be used or threatened in the

19   robbery?

20            THE DEFENDANT:  Yes.  More than likely, yes.

21            THE COURT:  Is there a stipulation with respect to the

22   movement of articles and commodities in commerce and the

23   obstruction, delay and affecting of commerce?

24            MR. BECKER:  Your Honor, we have no basis to contest

25   that allegation.

Ecvzcamp                    Plea

1          THE COURT:  Could I have a proffer from the government

2     on that?

3          MS. TEKEEI:  Yes, your Honor.  The items and the money

4     that was made off of the items that were stolen moved in

5     interstate commerce.

6          THE COURT:  I gather from looking at the indictment,

7     there may be some other actions for this overall conspiracy

8     that took place in Southern District.

9          MS. TEKEEI:  Yes, your Honor.  The other members of

10    the conspiracy took overt acts in furtherance of the conspiracy

11    here in the Southern District of New York.

12          And I would also proffer, your Honor, that we believe

13    the evidence at trial would show that Mr. Campbell assisted in

14    selecting the jewelry store that was robbed, particularly the

15    one on November 6th, 2013, which is the one I believe he's

16    referring to in Connecticut; that he drove one of the cars that

17    took members of the robbery crew to the area, and that they

18    traveled through the Bronx in connection with that particular

19    robbery, and that he also received proceeds of that robbery.

20          And the testimony that would be presented for, or the

21    evidence that would be presented at trial would include

22    testimony of law enforcement witnesses, victims from the

23    jewelry store that was robbed, accomplice testimony, as well as

24    physical evidence including DNA results from testing on

25    shattered glass from the store window and videotape from the

Ecvzcamp                    Plea

1    robbery.

2              MR. BECKER:  None of what was just said is disputed.

3              THE COURT:  You said DNA evidence.  Are your talking

4    about this defendant?

5              MS. TEKEEI:  No, your Honor.  I mean, I should say not

6    that I'm aware of, your Honor, but at least -- I'm not going

7    to -- I'm not going to guess, your Honor.  Not that I'm aware

8    of.

9              MR. BECKER:  Your Honor, I reviewed the discovery that

10   was provided in this matter.  There are DNA – there is at least

11   one DNA hit I'll call it.  It is not of Mr. Campbell.  And the

12   Prosecutor who is personally responsible for that case is

13   Richard Cooper I believe.  It's my understanding from him, and

14   I think the government just essentially confirmed it tacitly,

15   the government does not allege that Mr. Campbell actually

16   participated in the theft in terms of breaking the glass or

17   anything.  There is no question that he was part of the

18   conspiracy to do it, as he has told you.

19             THE COURT:  Right.  I just wanted to know if he had an

20   understanding at the time that he was agreeing to participate

21   in the way in which he agreed to participate, whether he had

22   any understanding that force or violence or the threat of force

23   or threat of violence would be used or was planned --

24             MR. BECKER:  Your Honor, my sense --

25             THE COURT:  -- in connection with the robbery.

Ecvzcamp                    Plea

1          MR. BECKER:  My sense is that it was certainly

2     reasonably foreseeable to him that that would happen.  And I

3     think he told you a few moments ago that he thought it was even

4     more than likely.

5          But I've spoken to him about this.  And, for example,

6     if one of the robbers walked into the jewelry store and there

7     was a Rolex watch sitting on the counter by some chance, he

8     likely would have taken it, and that would have been part of

9     the booty, and no force would have had to have been required.

10    But they went there that day with a hammer prepared to break a

11    plate glass window.  So it's fair to say that it was certainly

12    reasonably foreseeable that that type of force would be used.

13         THE COURT:  Did your client know they had a hammer or

14    they were going there with a hammer?

15         MR. BECKER:  May I inquire?

16         THE COURT:  I'm not sure whether it's needed, but it

17    is a conspiracy to commit Hobbs Act robbery.

18         MR. BECKER:  Your Honor, not that -- I mean, I

19    don't -- I mean, if the Court is satisfied that his allocution

20    as put on the record is sufficient, as I --

21         THE COURT:  I'm not -- I'm just raising this as a

22    question.  I'm not sure whether -- I'm not sure the extent to

23    which Mr. Campbell needs to know that force or violence might

24    be used or intended.  I'm not sure the extent to which that's

25    necessary.

1          MR. BECKER:  I've conferred with the government

2     regarding this, the adequacy of this allocution.  My

3     understanding is that the government deems it sufficient.

4          THE COURT:  Let me pose this particular question to

5     the government.  To what extent, if at all, does this defendant

6     have to have an understanding as to whether there would be

7     force used or planned or anticipated or attempted for any given

8     robbery?

9          MS. TEKEEI:  Your Honor, may I have one moment to

10    confer with defense counsel?

11         THE COURT:  Yes.

12         MS. TEKEEI:  Thank you.

13         (Conferring)

14         MR. BECKER:  Your Honor, Ms. Tekeei and I just

15    reviewed the elements of the offense.  And one of the elements

16    is that they -- and I'm not reading from what Ms. Tekeei just

17    showed me, but I'm paraphrasing I think accurately -- is that

18    one of the elements is that they deprived property -- they

19    deprived an owner of his property against his will by force, if

20    necessary.  So -- and that's sufficient.  So this agreement did

21    not contemplate that the robbers walk into the store and say to

22    the owner we'd like to have that Rolex watch, but we're not

23    going to pay you, just give it to us.  And if the owner said

24    no, they would say okay, thanks, and walk out.  They went there

25    prepared to use force, if necessary.  And I don't think --

Ecvzcamp                    Plea

1          THE COURT:  I'm not questioning that.  The question

2     that I'm asking is with respect to Mr. Campbell, who has said

3     that he was not there, he didn't go along, he wasn't the one

4     who was actually committing the robbery, whether for him -- and

5     I'm asking the question -- for him to be guilty of conspiring

6     to commit this type of robbery, whether he has to have an

7     understanding as to --

8          MR. BECKER:  As to what I just said.

9          THE COURT:  As to what you said.

10          MR. BECKER:  Yes.

11          THE COURT:  As opposed to the people who went there

12     have this understanding.

13          MR. BECKER:  Yes.  And I was about to --

14          THE COURT:  Okay.

15          MR. BECKER:  Agreed.  And I was about to suggest to

16     the Court that Mr. Campbell, who can speak in his own words,

17     would assure the Court that that was so.

18          Let me confirm that, okay.

19          THE COURT:  Okay.

20          (Conferring)

21          THE COURT:  By the way, the exact language of the

22     statute, Section 1951(b)(1) which defines robbery, the term

23     "robbery" means the unlawful taking or obtaining of personal

24     property from the person or the presence of another against his

25     will by means of actual or threatened force or violence or fear

Ecvzcamp                     Plea

1    of injury, immediate or future, to his person or property, or

2    property in his custody or possession or the person or property

3    of a relative or member of his family, or of anyone in his

4    company at the time of the taking or obtaining.

5              So I don't think it's only against his will, but it's

6    against his will by means of actual or threatened force or

7    violence or fear of injury.

8              MR. BECKER:  Yes, your Honor.  But I think that the

9    jury instructions and the case law, as the government has

10   pointed out to me by way of the elements, is that if somebody

11   walks into a store and says give me that, give me that watch,

12   and it's clear that they're there to steal it and the owner,

13   not wanting to get shot or maybe be harmed, says here, take it,

14   just don't hurt me, that that's a robbery.  And so --

15             THE COURT:  All right.

16             MS. TEKEEI:  Your Honor, if I may just add?  The

17   agreement has to cover the elements of Hobbs Act robbery.  And

18   one of those elements is that they would have used or attempted

19   to use force, as your Honor stated, and that he knows they

20   would have done that even if he wasn't the one, his

21   coconspirators would have done that, even if he wasn't the one

22   actually taking out those -- committing the robbery physically

23   at that location.  I think the facts are clear and the proffer

24   is clear that that was absolutely part of the agreement.

25             And then the question is whether the defendant just

Ecvzcamp                    Plea

1    needs to clarify what he said, that it was more than likely --

2    I think he said it was more than likely that they would use

3    force -- that he understood that they would use or threaten to

4    use force in order to obtain these goods.

5         THE DEFENDANT:  Yes.  Hello, your Honor.  I understood

6    that if they needed to use force, that they would -- they would

7    use force.

8         THE COURT:  All right.  Do either counsel believe any

9    additional facts need to be elicited for a satisfactory

10   allocution to count one of the 14 Crim. 130 case?

11        MS. TEKEEI:  No, your Honor.

12        MR. BECKER:  No, your Honor.

13        THE COURT:  I got two simultaneous nos.  Did the Court

14   Reporter get that?

15        THE COURT REPORTER:  Yes.

16        THE COURT:  All right.  I may have already asked this,

17   but did you know that it was against the law to agree with

18   another person to aid in any way in the type of robbery that

19   you've been talking about?

20        THE DEFENDANT:  Yes, your Honor.

21        THE COURT:  Let me ask all counsel present if there

22   are any other questions of any kind that you believe I should

23   be asking Mr. Campbell today.  Counsel?

24        MS. TEKEEI:  Not for the government, your Honor.

25        MR. BECKER:  No, your Honor.

Ecvzcamp                    Plea

1            MS. TEKEEI:  Thank you.

2            MR. ROE:  No, your Honor.

3            THE COURT:  All right.  Let me ask all three of you,

4     do any of you know of any reason why I should not recommend

5     acceptance of this plea with respect to either case?

6            MS. TEKEEI:  No, your Honor.

7            MR. BECKER:  No, your Honor.

8            MR. ROE:  No, your Honor.

9            THE COURT:  All right, then I think we have managed to

10    get to the end of this rather lengthy plea proceeding.

11            Based on my colloquy with Mr. Campbell, I conclude

12    that he understands the nature of the charges to which he's

13    pleading with respect to both of the criminal cases against

14    him, and that he understands the consequences of his plea.

15            I'm also satisfied that his plea is voluntary with

16    respect to both of the cases, and that there is a factual basis

17    for the plea with respect to each of the three charges in

18    question.

19            I also note for the record that I see no issue here

20    with respect to Mr. Campbell's competence to enter a plea.  He

21    seemed fully capable to participate in these proceedings today.

22    Accordingly, I hereby recommend that Judge Scheindlin accept

23    the proffered plea to counts two and three in the case numbered

24    S1 14 Crim. 254, and that Judge Patterson accept the proffered

25    plea to count one in the case numbered S4 14 Crim. 130.

Ecvzcamp                    Plea

1          Has either judge set a sentencing date?

2          MS. TEKEEI:  Judge Scheindlin has set a sentencing

3   date of April 2nd, 2015 at 4:30 p.m.  We do not have a

4   sentencing date from Judge Patterson.  And if the sentencings

5   are consolidated, I think -- I don't know what that date for

6   that would be, your Honor.

7          THE COURT:  All right.  Let's set a control date for

8   the sentencing before Judge Patterson.  And since we have a

9   date from Judge Scheindlin, why don't we just set the control

10  date as the same date for the Judge Patterson case, April 2nd,

11  2015.  That's longer than I would ordinarily go.  When they're

12  in custody I usually go no more than 90 days, but I think this

13  is an unusual enough circumstance that it makes sense to have a

14  single control date.

15          I'm going to leave it to counsel to raise with respect

16  to judges the issue of potential consolidation.  I'm not making

17  any kind of recommendation on that front.  That would be

18  entirely up to the district judges.

19          I assume there is no issue here as to bail?

20          MR. BECKER:  That's correct, your Honor.

21          THE COURT:  Okay.  On either two cases, I'm assuming.

22          I'm going to ask the government to prepare a

23  prosecution case summary for purposes of the presentence

24  report, both of the two cases, and to deliver that to the

25  Probation Department within two weeks, 14 days from today.

Ecvzcamp                     Plea

1          I'm also going to ask defense counsel, each of you, to

2     please schedule with the Probation Department a presentence

3     interview of your client and to make yourself available for

4     that interview.  It would also be appreciated if you can make

5     that happen within 14 days from now so the matter could be

6     moved along.

7          I assume the government will order a copy of the

8     transcript of this allocution and will submit it, together with

9     any necessary additional paperwork, to both Judges Scheindlin

10    and Patterson so they may act on my recommendations.

11         Needless to say, if the matter is consolidated, then

12    everything should go to that judge.

13         Is there anything else?

14         MS. TEKEEI:  Not from the government, your Honor.

15         MR. BECKER:  No, your Honor.  But I want to thank

16    you --

17         MR. ROE:  No.

18         MR. BECKER:  -- for working through this complex and

19    difficult proceeding.

20         THE COURT:  All right.  Next time when there is a slot

21    in your schedule, try to make that happen early.  If you can't,

22    try to reschedule, as opposed to simply saying we're here now,

23    which is I gather sort of what happened today.

24         Look, I'm happy to have had enough space in the

25    calendar to be able to do it today.

Ecvzcamp                              Plea

1             Best of luck to you, Mr. Campbell.

2             MS. TEKEEI:  Thank you.

3             THE DEFENDANT:  Thank you, your Honor.

4             MS. TEKEEI:  Thank you very much, your Honor.

5             (Adjourned to April 2, 2015 at 4:30 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25