LAW OFFICES

# Mark S. DeMarco

2027 WILLIAMSBRIDGE ROAD
SECOND FLOOR
BRONX, NEW YORK 10461
MSDLAW@AOL.COM

TELEPHONE
(718) 239-7070

FACSIMILE
(718) 239-2141

March 13, 2015

The Honorable Loretta A. Preska
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

**BY ECF & US MAIL**

Re:   ***United States v. Allen Williams***
     **14 Cr. 130 (LAP)**

Your Honor:

## <u>Introduction</u>

Desperate people often do desperate things and make horrible decisions.

In January 2013, 35-year-old Allen Williams was released from New York State prison after serving roughly 20 years for a crime that he committed when he was 15-years-old. Although his wife and infant son were living in Western Pennsylvania, Allen was prohibited by New York State Parole from leaving New York to join his family. Instead, he was forced to live in Suffolk County where he would be supervised by parole. He initially lived in a Holiday Inn Hotel, where he remained until it was financially impossible for him to remain.

After a brief period of homelessness with short stays in shelters and emergency housing, Mr. Williams moved in with a friend in Suffolk County. Roughly two weeks later, Allen's new residence was burned to the ground. According to the investigating detectives, his home of two-weeks was intentionally torched and set ablaze by family members of the young man killed 20 years earlier.

Since his release from prison, Mr. Williams had complied with the conditions of his parole, was actively seeking employment and looking forward to eventually joining his family in Pennsylvania. Instead, he was now homeless, broke, living in his wife's car and looking over his shoulder in fear for his life. Soon after being permitted to move to Brooklyn to live with family, Mr. Williams learned that his wife was pregnant. He was now unemployed, living with his mother and

Hon. Loretta A. Preska
March 13, 2015

expecting his first child.  Repeated attempts by Allen to secure employment proved unsuccessful and demoralizing.  Further, he was prohibited by New York State Parole from relocating and joining his pregnant wife in Pennsylvania.  He was now out of prison for less than one-year, financially and emotionally desperate and distraught.  Out of sheer desperation, he accepted an invitation to join a "smash and grab" robbery crew, a decision that he greatly regrets.

Allen Williams, by all accounts, is an intelligent, hard working, persevering and loving man, who longs to join his wife and young son in Aliquippa, Pennsylvania, and who is incredibly remorseful for participating in the conspiracy to rob jewelry stores.  Accordingly, on October 14, 2014, he pleaded guilty to  Count One of the above-reference indictment charging  him with conspiring to multiple jewelry store robberies in violation of  *18 U.S.C. § 1951*.  He is currently scheduled to be sentenced by Your Honor on March 18, 2015.

According to the Presentence Investigation Report ("PSR") prepared by the United States Probation Office, Mr. Williams's adjusted offense level was calculated to be guideline offense level 29, which, when combined with his criminal history category of III, gives him an applicable sentencing range of 108 to 135 months' imprisonment.

This letter is submitted to provide information to assist this Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by *18 U.S.C. § 3553(a)* in light of *United States v. Booker*, 543 U.S. 220 (2005).

Mr. Williams  respectfully requests that the Court consider several important circumstances of this case in fashioning an appropriate sentence.  This Court should consider Mr. Williams's troubled background and numerous good character traits as detailed in the Presentence Investigation Report ("PSR"), together with his acceptance of responsibility in fashioning the appropriate sentence.

We respectfully submit that these circumstances warrant a sentence substantially below advisory guideline range, an appropriate sentence satisfying the objectives embodied in *Booker* and *§ 3553(a)*.

## Objections to the Presentence Investigation Report ("PSR")

### Offense Conduct

Initially, with respect to paragraph 34 of the "Offense Conduct" section of the PSR, it must be noted that although Mr. Williams admitted to his involvement in the robberies to which he pleaded guilty, he did not admit to his involvement in the robbery of Martin Jewelers on January 19, 2014, in Cranford, New Jersey, since did not plan or participate in that robbery.  In fact, Mr. Williams first learned of that robbery after he was arrested.

2

Hon. Loretta A. Preska
March 13, 2015

Furthermore, since Mr. Williams did not participate in, had no knowledge of and did not plead guilty to the robbery of Martin Jewelers on January 19, 2014, he objects to ¶ 40 of the PSR, which states that he "participated in all five robberies and is responsible for the total loss amount of $1,091,000."

### Offense Level/Criminal History Computation

Mr. Williams next objects to ¶¶ 72 through 78 and 122 of the PSR, which relate to the robbery on January 19, 2014. As stated above, Mr. Williams did not participate in that robbery and did not become aware of that robbery until after his arrest on or about January 30, 2014. Although it is alleged that his car was used during the commission of that robbery, it must be noted that Mr. Williams simply loaned his vehicle to another individual with no knowledge that a robbery had been planned or that the car would be used during a robbery. Accordingly, since Mr. Williams did not participate in, had no knowledge of and did not plead guilty to conspiring to commit that robbery, no reference of that crime should be contained within the PSR.

In addition, should this robbery be attributed to Mr. Williams, he objects to ¶ 73 and the four-level sentencing guideline enhancement for the use of a dangerous weapon during the commission of this crime. Although there is no question that a hammer has the innate capability of inflicting substantial harm and, therefore, qualifies as a dangerous weapon, Mr. Williams was not involved in this robbery and is not accountable for the actions of his co-conspirators, who committed this crime. A defendant is accountable for the conduct of others that was both (i) in furtherance of the jointly undertaken criminal activity; and (ii) reasonably foreseeable in connection with that criminal activity. *U.S.S.G. § 1B1.3, Application Note 2.*[1]

Therefore, since Mr. Williams was unaware that this robbery had been planned and did not know that it was committed until after his arrest, the possession and use of the hammer by a co-conspirator should not be imputed to him.

### Application of the Section *3553(a)* Factors Calls for a Sentence Below the Advisory Guideline Range.

A court "shall impose a sentence sufficient, but not greater than necessary, to comply

---

[1] Although in his plea agreement Mr. Williams has stipulated to a four-level dangerous weapon enhancement for the hammers used to break open jewelry display cases during each of the robberies to which he pleaded, it should be noted that these hammers were never used as weapons to threaten anyone. Nor were they used to cause injury to any victim or person during the commission of the robberies. *See U.S. v. Elkins*, 16 F.3d 952, 953 (8th Cir. 1994).

Hon. Loretta A. Preska
March 13, 2015

with the purposes" of the Guidelines. *18 U.S.C. § 3553(a)*. The Guidelines range is the "starting point and the initial benchmark." *United States v. Johnson, 567 F.3d 40, 51 (2d Cir. 2009) (quoting Gall v. United States, 552 U.S. 38 (2007))*. "A district court is authorized to depart from a Guidelines range if the court finds that 'there exists an aggravating or mitigation circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" *United States v. Juvenile Male Po, 466 Fed. Appx. 14, 15 (2d Cir. 2012) (summary order) (citing 18 U.S.C. § 3553(b))*.

The Court, however, is to consider:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed —

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among

4

Hon. Loretta A. Preska
March 13, 2015

> defendants with similar records who have been found guilty of
> similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

*United States v. Boykins-Jenkins, 09 Cr. 861-01, 2011 U.S. Dist LEXIS 107255, at * 2
(S.D.N.Y. Sept. 22, 2011) (quoting 18 U.S.C. § 3553(a))*. The defense respectfully submits that
a below-Guidelines sentence is appropriate here.

### The Sentencing Factors As Applied to Allen Williams

*18 U.S.C. § 3553(a),* and *United States v. Crosby, 397 F.3d 103 (2d Cir. 2005)*, outline the
task facing district courts in considering the guidelines.  The court must determine the applicable
guidelines range, and further consider applicable policy statements.  After thus considering the
guidelines, the Court must consider all the other factors set forth in *§ 3553(a)* before determining
whether (i) to impose the sentence that would have been imposed under the guidelines, i.e. a
sentence within the applicable guideline range or within permissible departure authority, or (ii) to
impose a non-guideline sentence.

### Personal Characteristics

#### Mr. Williams's Childhood

At the age of eleven, Allen Williams was thrown out of his home by his mother's physically
abusive husband.  He lived with his grandmother for roughly four years until he was arrested when
he was fifteen years old for a murder committed during a robbery attempt.  Mr. Williams accepted
responsibility for that crime, pleaded guilty in a timely manner and was sentenced to an
indeterminate term of from nine years to life imprisonment.  He served the next twenty years of his
life in prison.  During this time, he earned his General Equivalency Diploma and completed an
eighteen-month course in animal care, earning a "Certificate of Occupational Training Animal
Caretaker."  **See Defendant's Exhibit A**.

#### Mr. Williams's Family

While incarcerated, Mr. Williams was introduced to Maria Swan and, on June, 21, 2004, they
were married at the Gouverneur Correctional Facility.  In October 2013, their first child, Airam
Williams, was born.  In her letter to this Court [**see Defendant's Exhibit B**], Mrs. Williams
describes her husband's struggles upon his release from prison and with New York State Parole.
More importantly, however, is the picture that she paints of Allen Williams.  She describes him as
hardworking and generous man who "[has] always placed family first and [has] been as generous
to those in need as he could be."

5

Hon. Loretta A. Preska
March 13, 2015

With respect to their son Airam, she writes:

In October 2013, Allen and I were blessed with a healthy and beautiful baby boy
name Airam. Watching Allen bond with Airam was amazing! I had not seen my
husband honestly that "alive" in many years! His sense of purpose in life had taken
hold; to always be there for our son, provide for our family and never lose faith.
Seeing them depart each other when our Airam was a tender 1 week old newborn was
gut-wrenching as Allen had to return to New York. Unfortunately, Airam has only
been able to see his father 3 times since his birth as Allen was later arrested and has
remained in custody since January 2014.

As Mrs. Williams's letter and the attached photographs illustrate [**see Defendant's Exhibit
C**], Allen Williams is a family man, who plans to live with and provide for his family upon his
release from prison.

### Mr. William's Post-Arrest Conduct

Immediately upon his arrest, Mr. Williams accepted responsibility for and admitted to his
involvement in the robberies in which he participated. Indeed, on the date of his arrest, he waived
his constitutional rights and provided details of his involvement in the robbery of several jewelry
stores. His acceptance of responsibility continued when he pleaded guilty, pursuant to a plea
agreement, on October 14, 2014. Since his incarceration, Allen has been a model inmate. He has
been employed in the MCC's kitchen, earning outstanding evaluations for his work. **See
Defendant's Exhibit D**.

Indeed, Allen plans to continue on this path when released from prison. He plans on
relocating to Western Pennsylvania to live with his wife and son, finding steady employment as
counselor or dog-trainer and coaching youth football. More importantly, Allen plans on raising his
son properly, righting his wrongs and salvaging his life.

### Conclusion

Mr. Williams's life thus far can only be described as extremely difficult. However, his
intelligence, perseverance and post-arrest behavior bode well for his ultimate rehabilitation. Indeed,
upon his release from prison, Mr. Williams plans to become a productive and law-abiding member
of society, a loving husband and a positive role model for his son. Accordingly, we urge Your
Honor to give effect to the statutory admonition embodied in *§ 3553(a)* by imposing a non-guideline
sentence.

Finally, Mr. Williams respectfully requests that this Court recommend, pursuant to *18 U.S.C.
§ 3582(a)*, that the United States Bureau of Prisons designate him to be housed in a facility near
Western Pennsylvania to facilitate family visits. It is also respectfully requested that this Court

Hon. Loretta A. Preska
March 13, 2015

recommend that Mr. Williams receive vocational training, if available.

Respectfully Submitted,

Mark S. DeMarco
Attorney for Allen Williams

cc:   Richard Cooper, Esq.
      Assistant United States Attorney
      Southern District of New York
      By Electronic Mail

      Mr. Allen Williams